Filed 10/16/23  P. v. Moore CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KENNETH LYNN MOORE,<br><br>        Defendant and Appellant. | A165429<br><br>(Alameda County<br>Super. Ct. No. 67113B) |

Defendant Kenneth Lynn Moore appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95, now section 1172.6.[1] In 1979, defendant was convicted of an array of over 50 crimes, including burglary, robbery, and rape.  Among these convictions were two for first degree murder with special circumstances for which the trial court sentenced defendant to life without possibility of parole.  On appeal, defendant argues

---

[1]     All further statutory references are to the Penal Code.

While this appeal was pending, section 1170.95 was renumbered to section 1172.6.  (Stats. 2022, ch. 58, § 10; see *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)  As such, we will refer to section 1172.6, but we will also refer to section 1170.95 as necessary to conform to the record.

1

the court erroneously concluded he was ineligible for resentencing as a matter of law.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Underlying Crimes and Procedural History

#### 1. The Charged Crimes

Defendant and co-defendant David Moore,[2] his brother, were charged by amended information with dozens of crimes committed in the summer of 1978.  As relevant here, defendant and David were charged with two counts of first degree murder (§ 187) in the killings of Eileen Rogers and Laura Muhlenbruch; they were also charged with two counts of robbery against the same victims.  As to the murder counts, the information included robbery-murder and multiple-murder special-circumstance allegations against defendant and David (former § 190.2, subds. (c)(3)(i), (c)(5)[3]), as well as

---

[2]    We will hereafter refer to David Moore by his first name for brevity and to avoid confusion with defendant.

[3]    This former version of section 190.2 read:  "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found . . . to be true: [¶] . . . [¶] (c) The defendant was personally present during the commission of the act or acts causing death, and *with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists*: [¶] . . . [¶] (3) The murder was willful, deliberate, and premeditated and was committed during the commission or attempted commission of any of the following crimes: [¶] (i) Robbery in violation of Section 211; [¶] . . . [¶] (5) The defendant has in this proceeding been convicted of more than one offense of murder of the first or second degree . . . . [¶] (d) For the purposes of subdivision (c), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim."  (Former § 190.2,

2

firearm use allegations against them (§ 12022.5). As to the robbery counts, the information alleged defendant and David used a firearm (§ 12022.5) and caused great bodily injury (§ 12022.7).

A summary of the facts underlying the murders and other crimes appears in our previous opinion, *People v. Moore* (1984) 162 Cal.App.3d 709 (*Moore I*).[4] We need not provide the entire summary of facts here, though we recount the facts of the murders to provide additional context: "[On the night of August 18, 1978], Eileen Rogers and her daughter Laura Muhlenbruch were killed in the garage of their apartment building. Both women were found on the steps leading from the garage to the lobby; Laura was nude except for shoes and socks and panties around her ankles. The two women had been shot by handguns. One shotgun shell was found outside the garage. Of three bullets taken from Muhlenbruch's body, one was definitely fired by a .38 Smith and Wesson found in the bushes behind 411 Fairmount [the location of the Moore brothers' apartment]." (*Moore I*, *supra*, 162 Cal.App.3d at pp. 711, 713.) Another of the bullets in Muhlenbruch's body, as well as a

---

subds. (c)(3)(i), (c)(5), (d), Stats. 1977, ch. 316, § 9, pp. 1257–1258, italics added.)

[4] Effective January 1, 2022, and before being renumbered, section 1170.95 was amended to restrict consideration of prior appellate opinions to the procedural history of the case recited therein. (*People v. Clements* (2022) 75 Cal.App.5th 276, 292.) Our own analysis of the issues on appeal is based on our review of the record of conviction, not the summary of facts in our prior appellate opinion. But we mention the facts set out in our prior opinion for additional context. In doing so, we note the trial court in this case indicated it was not relying on the prior opinion's factual recitations to reach its decision, though defendant does not dispute that our prior opinion accurately recites the trial evidence. Indeed, we note defendant himself incorporates the facts we set out herein concerning the murder into his own opening brief.

bullet taken from Rogers' back, could have been fired by a .38 caliber Colt also found in the bushes behind 411 Fairmount. (*Ibid*.)

### 2. *Instructions and Argument*

The trial court instructed on two theories of first degree murder: willful, deliberate, and premeditated murder, and felony murder. Though other instructions and further details will be addressed *post*,[5] we note the following for now.

With regard to felony murder, the court instructed that the killing of a human being that occurs as a result of the commission or attempted commission of a robbery or rape, where the perpetrator had the specific intent to commit such a robbery or rape, is first degree murder. The court also instructed that if a human being is killed by any one of several persons perpetrating or attempting to perpetrate a robbery or rape, all persons who directly commit such crime, or with knowledge of the unlawful purpose of the perpetrator, aid, promote, encourage, or instigate its commission, are guilty of first degree murder.

The trial court also instructed for both the robbery-murder and multiple-murder special circumstances, but emphasized the special circumstances would come into play only if the jury found defendant guilty of at least one first degree murder. The court told the jury it must "decide separately each special circumstance charged in this case as to each of the defendants."

---

[5]     Defendant filed a motion to augment seeking a complete set of the instructions given to the jury during the guilt phase that we granted. The executive officer of the superior court responded by submitting a letter stating the court was unable to locate the complete set of instructions. As such, we are confined to reviewing a portion of a reporter's transcript included in the record that shows only part of the instructions to the jury.

4

In advocating for murder convictions, the prosecutor's closing argument focused on the evidence that: the victims' possessions were found in the Moore brothers' apartment and in defendant's bedroom specifically; the murder weapons were hidden in bushes outside of their apartment; bullets taken from the crime scene and from the victims' bodies were fired or could have been fired from guns belonging to defendant and his brother; and the modus operandi was the same as at other crime scenes to which the brothers were linked. The prosecutor also focused on the jury instructions for first degree felony murder and for aiding and abetting a first degree felony murder.

### 3. *The Verdicts*

The jury found defendant guilty of both counts of first degree murder and found the personal firearm use allegations and the robbery-murder and multiple-murder special circumstances true. The verdict form for the murder counts did not specify the theory of murder liability. The verdict forms for the special-circumstance allegations mirrored the instructions, stating the jury found true the allegations that defendant "was personally present and, *with the intent to cause death, did physically aid or commit the act causing the death*" of Eileen Rogers and Laura Muhlenbruch, and that those murders were "wilful, deliberate, premeditated and committed during the commission and attempted commission of a Robbery." (Italics added.)

Aside from the murder convictions and special circumstances findings, the jury convicted defendant of an additional 56 counts, including the robberies of the two murder victims. With regard to those robberies, the jury found true the allegations that defendant personally used a firearm during the robberies and inflicted great bodily injury on the victims.

In May 1980, after the jury was unable to agree as to a penalty, the trial court sentenced defendant to life without the possibility of parole for the murder counts. This division affirmed the judgment in 1984. (*Moore I*, *supra*, 162 Cal.App.3d at p. 719.)

**B.    Proceedings on the Section 1170.95 Petition**

In February 2019, defendant filed a section 1170.95 petition. The petition checked boxes indicating that: (1) a charging document was filed against defendant allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder under the felony-murder rule or natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 effective January 1, 2019. Defendant also checked boxes indicating that he was convicted of first degree felony murder and that he could not now be convicted of that crime because he was not the actual killer, he did not aid and abet the murder with intent to kill, and he was not a major participant in the underlying felony who acted with reckless indifference to life.

The trial court appointed counsel for defendant and issued an order requesting briefing as to whether defendant "comes within" and is entitled to relief under section 1170.95, but indicated the briefing order was not an order to show cause. After the parties filed additional briefing, the court denied the petition for failure to state a prima facie case for relief. The court noted the record of conviction showed the jury made express findings that defendant physically aided or committed the act or acts causing death with the intent to kill, and that defendant was precluded from relief under section 1170.95 as a matter of law. This appeal followed.

6

The question presented is whether the record of conviction establishes as a matter of law that defendant is guilty of murder under a still-valid theory. (§ 1172.6, subd. (a)(3).) We conclude the instructions and jury verdicts in this case establish, at the very least, that defendant is guilty of first degree felony murder under section 189, subdivision (e)(2) ("section 189(e)(2)").

## A. Overview of Senate Bill No. 1437

Prior to Senate Bill No. 1437 (Senate Bill 1437), "[u]nder the old felony-murder doctrine, a defendant was liable for first degree murder if their confederate killed someone while they (the defendant) participated in the commission or attempted commission of a qualifying felony." (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574 (*Lopez*).) "The necessary mental state was simply the intent to commit a qualifying felony" and "malice was *imputed* to the participant based on their willingness to commit a felony our Legislature deemed ' "inherently dangerous to human life." ' " (*Ibid.*)

In 2018, the Legislature enacted Senate Bill 1437 which " 'amend[ed] the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e): " 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the

actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*Gentile*, *supra*, 10 Cal.5th at p. 842.)

Senate Bill 1437 also amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3) (section 188(a)(3)): " 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

Additionally, Senate Bill 1437 added section 1170.95 (later renumbered section 1172.6), which "provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); Stats. 2022, ch. 58, § 10.) Under the statute, "an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Lewis*, at pp. 959–960.)  When a petition complies with these three

requirements, the court must determine whether the petitioner has made a prima facie showing for relief. (*Id.* at p. 960.)

The prima facie inquiry under section 1172.6, subdivision (c), is "limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The trial court generally takes the petitioner's factual allegations as true and must issue an order to show cause if the petitioner would be entitled to relief if his or her factual allegations were proved. (*Ibid.*) But, after the appointment of counsel and the opportunity for briefing, the court may also consider the record of conviction to determine whether a petitioner has made a prima facie case. (*Id.* at pp. 957, 971.) The record of conviction includes closing arguments, jury instructions, verdict forms, and to a limited extent, prior appellate opinions in the case. (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.) " 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*People v. Wilson* (2023) 14 Cal.5th 839, 869.)

We review the trial court's determination that petitioner is ineligible for relief under section 1172.6 as a matter of law de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

**B.    Analysis**

To reiterate, under section 189(e)(2), felony-murder liability lies when a defendant who "was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." Section 189(e)(2) has a mens rea—intent to kill—and an actus reus—aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting the actual killer in the commission of murder in the first degree.

9

(*Lopez*, *supra*, 88 Cal.App.5th at p. 581.)  Below, we examine whether the record of convictions establishes these statutory requirements.

### 1. *Section 189(e)(2):  Mens Rea*

We have no difficulty concluding the record of conviction establishes that defendant acted with intent to kill, the mens rea required by section 189(e)(2).  The trial court instructed as to the robbery-murder special-circumstance allegation that the jury must find "(1) the murder was willful, deliberate and premeditated, and (2) the defendant was personally present during the commission of the act or acts causing death, and (3) that *the defendant with intent to cause death physically aided or committed the act or acts causing death*, and (4) the murder was committed during the commission of a robbery."  (Italics added)  Similarly, with regard to the multiple-murder special circumstance, the court instructed the jury must find "(1) the defendant was personally present during the commission of the act or acts causing death; (2) the defendant, *with intent to cause death, physically aided or committed the act or acts causing death*; and (3) the defendants or each of them have been convicted of first degree murder, and an additional count of murder, which can be either first or second degree."  (Italics added)  Furthermore, the court's instructions on the special circumstances explained to the jury that the special-circumstance findings had to be made as to each particular defendant:  "You must decide separately as to each of the defendants as to the existence or non-existence of each special circumstance charged in this case.  If you cannot agree upon your finding as to all of the defendants but can agree as to one of them, you must make your finding as to the one upon which you do agree."

The jury found both special-circumstance allegations true.  The verdict forms for the special-circumstance allegations reflect findings that defendant

"was personally present and, with the intent to cause death, did physically aid or commit the act causing the death of" Eileen Rogers and Laura Muhlenbruch and that the murders were "wilful, deliberate, premeditated and committed during the commission and attempted commission of a Robbery . . . ."  (Italics added.)

Thus, the record of conviction establishes the jury found defendant acted with intent to kill, the mens rea required by section 189(e)(2).  This refutes any conclusion that malice was merely imputed to him.

### 2. *Section 189(e)(2):  Actus Reus*

The question whether the record of conviction establishes defendant committed the actus reus required by section 189(e)(2) requires a bit more discussion.

### (a) *The crime that was aided and abetted*

Again, the actus reus required by section 189(e)(2) is that a defendant "*aided, abetted*, counseled, commanded, induced, solicited, requested, *or assisted* the actual killer *in the commission of murder in the first degree*." (Italics added.)  One issue of statutory interpretation that has arisen is whether liability for murder under this portion of the statute requires that the prosecutor prove the defendant aided, abetted, or assisted *the killing itself*, or alternatively, that the defendant aided, abetted, or assisted *in the qualifying felony* during which the killing occurs.

Support for the latter view is found in the following current language of section 189, subdivision (a), which Senate Bill 1437 did not amend:  "All murder that is . . . committed in the perpetration of, or attempt to perpetrate, . . . robbery . . . is murder of the first degree."  Additionally, the actus reus language in section 189(e)(2) is nearly identical to the language concerning the felony-murder special circumstance in section 190.2, subdivision (c),

11

which reads: "Every person, not the actual killer, who, with the intent to kill, *aids, abets, . . . or assists* any actor *in the commission of murder in the first degree* shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4." (Italics added; *People v. Ervin* (2021) 72 Cal.App.5th 90,106 (*Ervin*).)

In *People v. Dickey* (2005) 35 Cal.4th 884 (*Dickey*), the California Supreme Court examined the meaning of the foregoing italicized language in section 190.2, subdivision (c) (formerly § 190.2, subd. (b)) and expressly rejected the argument that the felony-murder special circumstance required proof that the defendant assisted in the killings themselves. (*Dickey*, at pp. 900–901.) Following the passage of Senate Bill 1437, the Court of Appeal similarly held in *Lopez*, *supra*, 88 Cal.App.5th 566, that the actus reus required by section 189(e)(2) is an act that assists in the commission of the underlying felony or attempted felony that results in death, not the killing itself. (*Lopez*, at pp. 577–578, review den. May 31, 2023, S279347.) *Lopez* relied on *Dickey*, reasoning that section 189(e)(2)'s current inclusion of language nearly identical to the language interpreted in *Dickey* signaled that the Legislature intended the same meaning when enacting Senate Bill 1437. (*Lopez*, at pp. 577–578.)

*Lopez* offered the following additional reasons supporting its interpretation of section 189(e)(2): (1) section 189, subdivision (a) defines murder in the first degree as murder committed in the perpetration or attempted perpetration of a qualifying felony, so assisting in a qualifying felony in which death occurs is the same as assisting the actual killer in committing first degree murder (*Lopez*, *supra*, 88 Cal.App.5th at p. 578); (2) the purpose of Senate Bill 1437 was to stop imputing malice to defendants

in order to justify a murder conviction, but a defendant who commits a qualifying felony while harboring *express* malice (see § 188, subd. (a)(3)) does not need that protection, so "there is no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill 1437" (*Lopez*, at p. 578); and (3) the alternative interpretation (favored by the dissent in *Lopez*) actually makes it "easier" to obtain a murder conviction for defendants who harbor the less culpable state of mind of "reckless indifference to human life than for those who acted with express malice," since the prosecution would only have to prove "they played a major role in the felony to be guilty of first degree murder under section 189" (*Lopez*, at p. 579).

The alternative view—espoused by the dissent in *Lopez*—is that section 189(e)(2) narrowed the actus reus for felony-murder liability to aider and abettors who aided, abetted, or assisted in the killing itself. (*Lopez*, *supra*, 88 Cal.App.5th at p. 583, dis. opn. of Raphael, J.) The dissent reasoned this interpretation of section 189(e)(2)'s actus reus was supported by the statutory language, which did not simply say the actus reus required only that a defendant assisted in an underlying felony. (*Lopez*, at pp. 584–585.) The dissent also reasoned that the majority's interpretation would render section 189(e)(2)'s actus reus language surplusage "because a person convicted on a section 189(a) felony-murder theory must have assisted in a qualifying felony in which death occurs." (*Lopez*, at p. 585.) The dissent was unpersuaded by *Dickey* because the decision predated Senate Bill 1437. (*Lopez*, at pp. 586–587.) Moreover, unlike the special circumstance in *Dickey*, which applied to a "nonkiller who with intent to kill 'aids . . . *any actor* in the commission of murder in the first degree,' " section 189(e)(2) limits felony-

13

murder liability to "nonkillers who with intent to kill 'aided . . . *the actual killer* in the commission of murder.' " (*Lopez*, at p. 587.)

To buttress its position, the dissent relied on *Ervin*, *supra*, 72 Cal.App.5th 90. In *Ervin*, a jury convicted the defendant of burglary, robbery, and first degree murder, and found true two felony-murder special-circumstance allegations, but found not true an allegation the defendant personally used a firearm as to the murder count. (*Ervin*, at p. 98.) In reversing the denial of the defendant's section 1170.95 petition at the prima facie stage (*id.* at p. 95), *Ervin* reasoned the defendant was not categorically ineligible for relief because the jury did not find him to be the actual shooter, and so potentially found him guilty of first degree murder under the former first degree felony murder rule. (*Ervin*, at pp. 107–108.) *Ervin* explained, "under the former felony-murder rule, any participant in a robbery could be liable for murder without a finding of malice if someone was killed during the robbery," while "the current felony-murder rule more specifically requires the jury to find a defendant aided and abetted '*the actual killer* in the commission of murder in the first degree.' " (*Id.* at pp. 94, 106.) Rejecting the People's argument that the true findings on the felony-murder special-circumstance allegations precluded relief, *Ervin* explained "[t]he felony-murder special circumstance generally requires the jury to find a defendant aided and abetted '*any actor* in the commission of murder in the first degree,' while the current felony-murder rule more specifically requires the jury to find a defendant aided and abetted '*the actual killer* in the commission of murder in the first degree.' " (*Id.* at pp. 104, 106.) In sum, the *Lopez* dissent concluded, "As in *Ervin*, a finding of an act that aided the underlying felony is not necessarily enough for a murder conviction under [section 189, subdivision (e)(2)], as the Legislature required an act, done with intent to kill,

14

that aided the killer in committing the murder." (*Lopez*, *supra*, 88 Cal.App.5th at p. 588.)  Notwithstanding the vigorous dissent in *Lopez*, the California Supreme Court denied review of that decision in May 2023. (*Lopez*, *supra*, 88 Cal.App.5th 566, review den. May 31, 2023, S279347.)

After due consideration, we are more persuaded by the analysis of the majority in *Lopez*, particularly given the language of section 189, subdivision (a), and *Dickey*, 35 Cal.4th 884, neither of which the *Ervin* court discussed.  *Dickey* is not rendered irrelevant simply because it predated Senate Bill 1437.  In *Dickey*, the Supreme Court interpreted a phrase almost identical to the phrase used in section 189(e)(2), providing strong support for the majority's position in *Lopez*.  We thus conclude the actus reus element of section 189(e)(2) requires an aider and abettor to have aided, abetted, or assisted a qualifying felony during which a killing occurs.

We acknowledge the point of the dissent in *Lopez* that section 189(e)(2) requires that a defendant's aiding and abetting must be provided to the "actual killer." (*Lopez*, *supra*, 88 Cal.App.5th at p. 587.)  But that requirement is met where, as here, the special-circumstance instruction tells the jury it has to find the "defendant with intent to cause death *physically aided or committed the act or acts causing death*." (Italics added.)  And as the trial court below instructed:  "A defendant shall be deemed to have *physically aided in the act or acts causing death* only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or battery . . . upon the person killed, or if by word or conduct he orders, initiates or coerces the actual killing of the victim." (Italics added.)  Though this latter instruction narrowed the ways in which defendant could have physically aided the act causing death, it nonetheless required the jury to find that defendant aided the killer in the killing act.

Without addressing the actus reus analyses of *Lopez*, or *Dickey*, or even *Ervin*, defendant argues that current law requires a showing that he "acted with knowledge that the perpetrator (his brother) intended the victims' death[s], with an intent to facilitate or encourage his brother to kill the victims." Setting aside the circumstance that the jury actually determined that defendant himself acted with the intent to cause the victims' deaths, his reliance on *People v. Chiu* (2014) 59 Cal.4th 155, *People v. McCoy* (2001) 25 Cal.4th 1111, and *People v. Offley* (2020) 48 Cal.App.5th 588, remains unavailing. *Chiu* and *McCoy* pre-date Senate Bill 1437, and more to the point, none of those cases meaningfully addressed the felony-murder doctrine. (*Chiu*, at p. 158; *McCoy*, at pp. 1118, 1122–1123; *Offley*, at p. 595 & fn. 4.)

### (b) *Application of the actus reus requirements*

Having concluded section 189(e)(2)'s actus reus requirement means that an alleged aider and abettor must have "aided, abetted . . . or assisted" the qualifying felony during which the killing occurs, we turn to address whether the record of conviction establishes the requisite actus reus.

Aiding and abetting has its own act and mental state elements. Specifically, "a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561; *People v. Koenig* (2020) 58 Cal.App.5th 771, 799.)

Here, the trial court instructed on two theories of first degree murder: willful, deliberate and premeditated murder, and felony murder. The instructions for felony-murder liability as an aider and abettor instructed: "if

16

a human being is killed by any one of several persons engaged in the perpetration of or attempt to perpetrate the crime of robbery . . . , all persons who either directly and actively commit the act constituting such crime, *or who with knowledge of the unlawful purpose of the perpetrator of the crime, aid*, promote, encourage, or instigate by act or advice *its commission . . .* are guilty of murder in the first degree." (Italics added.) The court also instructed that "a person aids and abets the commission of a crime *if he knowingly* and with criminal intent *aids*, promotes, encourages or instigates by act or advice, or by act and advice, *the commission of such crime*." (Italics added.)

Here, the jury found defendant guilty of robbery against the murder victims. Robbery, as the trial court instructed, requires proof of the specific intent to permanently deprive the owner of their property.

Taken together, the foregoing instructions and the completed jury verdict forms establish that: (1) defendant acted with knowledge of the unlawful purpose of the perpetrator, i.e., to rob; (2) he, too, specifically intended to commit the robbery; and (3) he aided in the commission of the crime. Thus, not only does the record of conviction show the mens rea element of section 189(e)(2) has been met (i.e., defendant acted with the intent to cause the victims' deaths), the record also shows the statutory actus reus requirement has been established (i.e, defendant intended to cause the victims' deaths *while aiding, abetting, or assisting in the qualifying robbery felony during which the killings occurred*).

Having so concluded, we need not and do not discuss defendant's argument that the jury could have concluded he was guilty of first degree murder "as a natural and probable consequence of robbery." Nor do we need to address his further contentions that the trial court's order cannot be

17

upheld based on the true finding as to the firearm use allegations, or on the ground that defendant was a major participant who acted with reckless indifference to human life.

**DISPOSITION**

The order denying defendant's section 1170.95 petition is affirmed.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Petrou, J.

*People v. Moore* (A165429)

18